UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                     :

DIOSDADO CABELLO-RONDÓN,        :
                                       :

                     Plaintiff,     :

                                         :

                -v-               :          16-cv-3346 (KBF)

                                         :

DOW JONES & COMPANY, INC.,       :        <u>OPINION & ORDER</u>

                                         :

                    Defendant.    :

                                         :
------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: <u>August 16, 2017</u>

KATHERINE B. FORREST, District Judge:

       Currently before the Court is defendant Dow Jones & Company ("Dow Jones")'s motion to dismiss a libel action brought by plaintiff Diosdado Cabello-Rondón. (ECF No. 36.) Cabello alleges that Dow Jones published a defamatory article in the <u>Wall Street Journal</u> entitled "Venezuelan Officials Suspected of Turning Country into Global Cocaine Hub." For the reasons set forth below, Cabello has failed to adequately plead material falsity as to most challenged statements and actual malice as to all challenged statements. Dow Jones's motion is therefore GRANTED.

I.     FACTUAL BACKGROUND

       Cabello is a resident and citizen of the Bolivarian Republic of Venezuela. (ECF No. 32, Second Amended Complaint ("SAC") ¶ 8.) He is a Venezuelan government official who has served in a number of high-ranking positions within the Venezuelan government, including as a current member of the Venezuelan

National Assembly and former National Assembly President.  (Id.)  He serves as the Vice President of Venezuela's current governing party, and in that capacity, "is often referred to as the country's 'Number Two.'"  (Id.)

On May 18, 2015, the Wall Street Journal—which is owned by defendant Dow Jones—published an article entitled "Venezuelan Officials Suspected of Turning Country into Global Cocaine Hub."  (Id. ¶¶ 1, 10.)  The subtitle of the article reads, "U.S. probe targets No. 2 official Diosdado Cabello, several others, on suspicion of drug trafficking and money laundering."  (Id. ¶ 1.)  The article states that "U.S. prosecutors are investigating several high-ranking Venezuelan officials," including Cabello, "on suspicion that they have turned the country into a global hub for cocaine trafficking and money laundering . . . ."  (ECF No. 28, Ex. A ("WSJ Article") at 3.)  The article, citing to an unnamed "Justice Department official and other American authorities," states that Cabello is a "leading target" of the U.S. investigation.  (Id.; SAC ¶ 19.)  The article further cites "the Justice Department official" as saying that "extensive evidence" indicates that Cabello "is one of the heads, if not the head, of the cartel" and that he "certainly is a main target."  (WSJ Article at 3.)  The article also states, without attribution, that Cabello is "[t]he biggest target" of the investigation.  (Id. at 7.)

The article notes that Cabello and other officials did not return "phone calls and emails requesting comment" to the article and that "[c]alls and emails seeking comment from several government ministries as well as the president's office went unanswered," but includes statements Cabello has previously made on television

disputing similar stories published by Venezuelan news outlets earlier in the year. (Id. at 3, 6 ("They accuse me of being a drug trafficker without a single piece of evidence and now I'm the bad guy . . . . I feel offended, and none of them even said they're sorry.").)

In addition, the article cites "people familiar with the case" as saying that Leamsy Salazar, who has said he headed Cabello's security detail, told U.S. authorities that he witnessed Cabello supervise the launch of a large shipment of cocaine from Venezuela. (Id. at 5.) The article then states that Cabello "has publicly railed against" Salazar, saying that he did not head his security detail, is an "infiltrator," and has no proof of Cabello's involvement in drug trafficking. (Id. at 6.)

## II.   PROCEDURAL HISTORY

Cabello commenced this action on May 5, 2016 and subsequently amended his complaint on August 30, 2016. (ECF No. 18.) After defendant filed a motion to dismiss on October 3, 2016, Cabello filed a second amended complaint on October 21, 2016. (SAC.) The SAC alleges that the article contains materially false and defamatory statements of fact. In particular, Cabello asserts:

> a) "Upon information and belief, the title and subtitle [of the article], insofar as they mentioned and referred to Mr. Cabello, are materially false or otherwise render a materially false depiction of the subject, nature, and/or content of purportedly ongoing, classified federal law enforcement activities" (Id. ¶ 18);
>
> b) Dow Jones's "wholly unsourced and unsubstantiated description of Mr. Cabello, in no uncertain terms, as being '[t]he biggest target' of an ongoing federal criminal investigation into international

narcotics trafficking and money laundering activities is materially false" (id. ¶ 20);

c) Dow Jones's "assertions, suggestions, and/or insinuations" that "one or more officials from the DOJ . . . have deliberately leaked to it information about a classified, ongoing criminal investigation, enough so as to definitively label Mr. Cabello as a 'leading target' of the investigation and as 'one of the heads, if not the head, of the cartel,'" are materially false (id. ¶ 25);

d) Statements attributed to DOJ officials that Cabello is "a leading target" of a federal criminal investigation into drug trafficking and money laundering, and that "[t]here is extensive evidence to justify that [Mr. Cabello] is one of the heads, if not the head, of the cartel" are materially false (id. ¶ 30);

e) Statements that "the purported investigation centers on suspicions that Mr. Cabello had played some type of leading, criminally culpable role in turning his own country into 'a global hub for cocaine trafficking and money laundering,' enough so as to definitively label Mr. Cabello as being '[t]he biggest target' of the investigation, are materially false" (id. ¶ 25);

f) A statement, attributed to a former Venezuelan National Guard Officer, that "[t]he involvement of top officials . . . in the government of Venezuela in drug trafficking is very clear" is materially false (id. ¶ 34); and

g) An "accusation" attributed to Leamsy Salazar—namely, that Salzar saw Cabello supervise the launch of a large shipment of cocaine from Venezuela's Paraguaná peninsula—is materially false, "to the extent that it has ever been made and in the form that the Article purports the accusation to have been made" (id. ¶ 39).

According to Cabello, these allegedly defamatory statements constitute libel per se because they charge or accuse Cabello of committing serious crimes (i.e., federal drug trafficking and money laundering offenses) and tend to or are designed to injure Cabello in his profession as a high-level Venezuelan government official.

4

(<u>Id.</u> ¶ 51.)  Cabello alleges that the false and defamatory statements were made

with actual malice, based on the following:

> a.  Jones cited to nonexistent government sources of its own making, which it falsely cast as leaks from unnamed DOJ and other U.S. government officials in order to bolster the credibility of its false and defamatory statements; and/or
>
> b.  Dow Jones relied on anonymous or unreliable government sources without first conducting proper further investigation, verification, or other vetting; and/or
>
> c.  Dow Jones failed to question the reliability of its government sources in any way either before or at the time the Article was published, under circumstances where it should have been prompted to do so; and/or
>
> d.  Dow Jones obtained a . . . quote concerning Mr. Cabello from a similarly deficient article published several months prior within the Spanish periodical, <u>ABC</u>, and falsely cast that quote as having been obtained from persons involved in an official investigation; and/or
>
> e.  Dow Jones's . . . statements against Mr. Cabello are based wholly on information from unverified and anonymous sources.

(<u>Id.</u> ¶ 52.)  On November 14, 2016, defendant moved to dismiss the second amended

complaint.

III.   CHOICE OF LAW

Though neither parties have briefed the issue, both presume that New York

defamation law, as it has developed in light of federal First Amendment law,

governs this dispute.  (<u>Compare</u> ECF No. 27 at 13 (defendant's opening

memorandum of applying New York law), <u>with</u> (ECF No. 38 at 7 (plaintiff's opposition applying New York law).)  The Court agrees.

"A federal court sitting in diversity applies the choice of law rules of the forum state," which, here, is New York.  <u>Lee v. Bankers Tr. Co.</u>, 166 F.3d 540, 545 (2d Cir. 1999).  "In defamation cases, 'New York applies the law of the state with the most significant interest in the litigation.'"  <u>Condit v. Dunne</u>, 317 F. Supp. 2d 344, 352 (S.D.N.Y. 2004) (quoting <u>Lee</u>, 166 F.3d at 545) (internal quotation marks omitted).  "In general, to determine which state has the most significant interest in, or relationship to, the litigation, the Court should look chiefly to 'the partie' domiciles and the locus of the tort.'"  <u>Id.</u> (quoting <u>Lee</u>, 166 F.3d at 545).  For an individual, "[d]omicile in a State generally requires a physical presence in the State and an intention to make the State a permanent home."  <u>Id.</u> at 352-53 (quoting <u>Antone v. Gen. Motors Corp., Buick Motor Div.</u>, 473 N.E.2d 742, 745 (N.Y. 1984) (internal quotation marks omitted)).  And "the domicile of a corporation for choice-of-law purposes is the state where it maintains its principal place of business."  <u>DiTondo v. Meagher</u>, 883 N.Y.S.2d 690, 695 (N.Y. Sup. Ct. 2009)).  For defamation cases where the statements at issue are published nationally, "the tort essentially lacks a locus, but rather injures plaintiffs everywhere at once."  <u>Condit</u>, 317 F. Supp. 2d at 353.  In such cases, courts assessing which law to apply consider where the plaintiff suffered the greatest injury, where the statements emanated from and were broadcast, where the activities to which the allegedly defamatory statements

took place and the policy interests of the states whose laws might apply.  Id. at 353-54.

Here, plaintiff alleges that he is a resident of Venezuela and that Dow Jones's headquarters and principal place of business is in New York.  (SAC ¶¶ 8-9.) Plaintiff alleges that "a substantial part of the events or omissions giving rise to the claims" stated in his complaint occurred in New York, and that his "reputation and standing in the community" were harmed "in this [judicial] District, the State of New York, the United States, his home country of Venezuela, and everywhere else in the world where the Wall Street Journal or its affiliates are published and/or read."  (Id. ¶ 50.)  In light of Dow Jones's status as a New York domiciliary, New York's interest in regulating the conduct of its media, the claim that the purportedly defamatory statements allegedly emanated from New York, the diffuse effects of the harm Dow Jones's conduct allegedly caused and the lack of any allegations as to Venezuela's interest in policing defamation claims, the Court finds that New York law applies to this dispute.

IV.    LEGAL STANDARDS

A.  Standard of Review

When resolving a motion to dismiss, a court must construe the complaint liberally, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.  Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001), as amended (Apr. 20, 2001).  A complaint survives a motion to dismiss under 12(b)(6) only if it "contain[s] sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

At the motion to dismiss stage, a court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference."  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)) (internal quotation marks omitted); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  The Court may also consider a document that is not incorporated by reference or attached to the counterclaim if the counter-plaintiff "relies heavily upon its terms and effect."  Chambers, 282 F.3d at 153 (quoting Int'l Audiotext Network, 62 F.3d at 72) (internal quotation marks omitted)).

B.  Elements of a Libel Claim

To state a claim for libel under New York law, a public official or a public figure "must show that the statements it complains of were (1) of and concerning [the plaintiff], (2) likely to be understood as defamatory by the ordinary person, (3) false, and (4) published with actual malice, that is, either knowledge of falsity or reckless disregard of the truth."  Church of Scientology Int'l v. Behar, 238 F.3d 168, 173 (2d Cir. 2001).

To survive a motion to dismiss, a plaintiff suing for defamation must plead facts supporting a plausible inference that "the identified statements were false." Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A., 14 F. Supp. 3d 191, 216 (S.D.N.Y. 2014). Adequately pleading falsity requires the plaintiff to "plead facts that, if proven, would establish that the defendant's statements were not substantially true." Tannerite Sports, LLC v. NBCUniversal News Grp., No. 15-3485-CV, 2017 WL 3137462, at *8 (2d Cir. July 25, 2017). "[A] statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." Id. (quoting Biro v. Conde Nast, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012)). "When a court interprets a publication in an action for defamation, '[t]he entire publication, as well as the circumstances of its issuance, must be considered in terms of its effect upon the ordinary reader.'" Id. (quoting Silsdorf v. Levine, 449 N.E.2d 716, 719 (N.Y. 1983)). Moreover, a plaintiff "must identify how the defendant's statement was false to survive a motion to dismiss." Id. at *6 (emphasis added).

In addition, to state a claim for defamation, public officials and public figures, such as plaintiff Cabello, must plead actual malice. See Biro v. Conde Nast, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013), aff'd, 807 F.3d 541 (2d Cir. 2015), and aff'd, 622 F. App'x 67 (2d Cir. 2015). "Whether a plaintiff is a public figure is a question of law for the court." Celle v. Filipino Reporter Enterprises Inc., 209 F.3d 163, 176 (2d Cir. 2000). In general, anyone who has "voluntarily sought and attained influence or prominence in matters of social concern" is considered a public figure. Celle, 209

F.3d at 176 (2d Cir. 2000).  The requirement that a public figure or public official may not "recover[] damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'" is constitutional, and stems from a desire not to "dampen[] the vigor and limit[] the variety of public debate."  New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964).

To adequately plead actual malice, a public figure must plead "plausible grounds" to infer that a "publisher had a subjective awareness of either falsity or probable falsity of the defamatory statement, or acted with reckless disregard of its truth or falsity."  Celle, 209 F.3d at 182.  A public figure pleads such plausible grounds "by alleging 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' of actual malice."  Biro v. Conde Nast, 807 F.3d 541, 546 (2d Cir. 2015) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

Whether a plaintiff has adequately pled actual malice "depend[s] on the facts and circumstances of each case."  Id.  By way of guidance, the Second Circuit has stated that allegations that a story was fabricated might survive a 12(b)(6) motion "if the defendant provides no source for the allegedly defamatory statements or if the purported source denies giving the information."  Id. at 545.  Alternatively, a public figure may adequately plead actual malice by "point[ing] to the fact that the allegedly defamatory statements were 'based wholly on an unverified anonymous telephone call' or were published despite 'obvious [specified] reasons to doubt the veracity of the informant or the accuracy of his reports' or despite the 'inherently

improbable' nature of the statements themselves." Id. (quoting St. Amant v. Thompson, 390 U.S. 727, 732 (1968)) (alternations in original). That said, a complaint that fails to "allege facts that would have prompted the . . . defendant[] to question the reliability of any of the named or unnamed sources at the time the [a]rticle was published" cannot survive a motion to dismiss. See Biro, 807 F.3d at 546.

## V.   DISCUSSION

Defendant moves to dismiss Cabello's complaint on the grounds that he has failed to adequately plead material falsity and actual malice. (See ECF Nos. 27, 37, 39.) The Court agrees that, as to statements referring to Cabello as "[t]he biggest target" or "a leading target" of U.S. investigations, Cabello has not adequately pled material falsity. As to those statements, plaintiff has not contested the underlying "gist" of the statements—namely, that he is under investigation by U.S. authorities for suspected drug trafficking and money laundering activities.[1]  But in addition, and fatal to the action as a whole, he has not pled sufficient facts to support an allegation of actual malice. Thus, for the reasons stated below, Dow Jones's motion to dismiss is GRANTED in whole.

### A.   Material Falsity

---

[1] The Court does not address whether Cabello has pled material falsity as to the allegations attributed to Leamsy Salazar or a former Venezuelan National Guard Officer (see SAC ¶¶ 34-39) because even if Cabello has sufficiently alleged that those statements are materially false, he nevertheless has failed to show that they were published with actual malice.  For the same reason, the Court does not address whether Cabello has or could plausibly plead that the statement attributed to the former Venezuelan National Guard Officer was "of and concerning" Cabello, as that term has been defined under New York law.  (See WSJ Article at 8-9; SAC ¶ 34; ECF No. 27 at 19 n.10; ECF No. 38 at 9 n.4.)

As set forth above, a plaintiff must allege that a purportedly defamatory statement is not "substantially true" to survive a motion to dismiss under 12(b)(6). Tannerite Sports, 2017 WL 3137462, at *4. When reviewing a statement for substantial truth, "[i]t is only necessary that the gist or substance of the challenged statements be true." Printers II, Inc. v. Professionals Pub., Inc., 784 F.2d 141, 146 (2d Cir. 1986). The majority of Cabello's objections to the statements in the article pertain to statements describing him as "[t]he biggest target" or "a leading target" of U.S. investigations. (See SAC ¶¶ 20, 25, 30.) Cabello has failed to adequately plead that those statements are materially false because he has not challenged the "gist or substance" of those statements—that he is, in fact, under investigation for his potential involvement in drug trafficking and money laundering activities.

Cabello contests this conclusion on several grounds. First, Cabello argues that he has adequately pled that the article's statements regarding his status as a target of the investigation are materially false. (See ECF No. 38 at 9-10.) In particular, Cabello points to his statement that, "[u]pon information and belief, the title and subtitle, insofar as they mentioned and referred to Mr. Cabello, are materially false or otherwise render a materially false depiction of the subject, nature, and/or content of purportedly ongoing, classified federal law enforcement activites." (SAC ¶ 18.)[2] But this conclusory and convoluted statement is insufficient as a matter of law. To plausibly plead falsity, Cabello must do more

---

[2] The headline of the article is, "Venezuelan Officials Suspected of Turning Country into Global Cocaine Hub." (WSJ Article at 1.) The subtitle of the article reads, "U.S. probe targets No. 2 official Diosdado Cabello, several others, on suspicion of drug trafficking and money laundering." (Id.)

than perfunctorily state that a statement is false; rather, Cabello "must identify

<u>how</u> the defendant's statement was false." <u>Tannerite</u>, 2017 WL 3137462, at *6.

Cabello's complicated construction offers no guidance regarding what portion of the

headline and subtitle Cabello believes to be materially false:  is it that he is

suspected of turning Venezuela into a global cocaine hub?  Is it that U.S. authorities

have launched investigations?  Is it that the investigations focus on drug trafficking,

or on money laundering, or both?  Or is it that "a Justice Department official"

leaked this information?  Without greater specificity, Cabello has not plausibly pled

facts that give rise to the inference of a valid claim.[3]  If anything, Cabello's vague

statement, coupled with his use of the disjunctive, suggests that he is "carefully

avoiding alleging" that the central claim in the headline and subtitle—that Cabello

is under investigation by U.S. authorities for suspected involvement in drug

trafficking and money laundering—is false.  <u>Hohmann v. GTECH Corp.</u>, 910 F.

Supp. 2d 400, 408 (D. Conn. 2012).

---

[3] In addition, Cabello's claim that the headline of an article "can be defamatory in and of itself" is incorrect as applied to this case.  As the source Cabello cites for this claim makes clear, "[d]efamatory head lines are actionable though the matter following is not, <u>unless</u> they fairly index the substance of the matter to which they refer, and . . . <u>unless</u> they are a fair index of the matter contained in a truthful report . . . . If the headline is a fair index of an accurate article, it is not actionable."  <u>Schermerhorn v. Rosenberg</u>, 426 N.Y.S.2d 274, 286-87 (App. Div. 1980) (quoting <u>Lawyers' Co-Operative Pub. Co. v. W. Pub. Co.</u>, 352 N.Y.S. 1120, 1123 (App. Div. 1898)) (internal citation marks omitted).  Here, the headline nearly perfectly tracks the substance of the article that follows.  Thus, unlike the headline at issue <u>Schermerhorn</u>, the headline of the <u>Wall Street Journal</u> article is not itself actionable.  <u>See id.</u> at 279-80 (finding a defamation claim regarding the headline, "Schermerhorn Says NDDC Can Do Without Blacks," was actionable because the substance of Senator Schermerhorn's statement, as accurately reflected in the article that followed the headline, was that he hoped that those selected to the NDDC's board of directors would be the best qualified, regardless of race).

Several of Cabello's other claims fail for the same reason.  For instance, Cabello argues that he has pled falsity as to the existence of an official investigation against him by "noting the inherent improbability of sworn U.S. federal agents leaking classified details of an ongoing, highly sensitive international criminal investigation to the media, in possible violation of U.S. law," and by "alleging as materially false—to the extent it may relate to or implicate Mr. Cabello—a statement by an otherwise unidentified former Venezuelan National Guard Officer that 'top officials . . . in the government of Venzeula' are 'very clear[ly]' involved in drug trafficking."  (ECF No. 38 at 17.)  But the first allegation challenges whether U.S. federal agents leaked information regarding the investigation, and the second asserts that he is not actually involved in drug trafficking.[4]  Neither address whether a U.S. investigation is in fact underway.  Similarly, Cabello's claim that the article "inaccurately represented quotes from unnamed government sources" when it stated U.S. authorities were investigating Cabello does not actually contest the existence of the investigation.  (See SAC ¶ 24.)  Where, as here, "[p]laintiff[] appear[s] to seek every possible route around the essential fact that [he] does not claim that [defendant's] statements were false," he has failed to state a claim for defamation.

---

[4] This is not to say that Cabello has necessarily plausibly alleged that (1) government agents did not leak sensitive information, or (2) he was not involved in drug trafficking.  The point here is simply that these allegations—plausible or otherwise—do not in any way touch on whether Cabello has adequately alleged the material falsity of the claim that he is under investigation by U.S. authorities.

14

Second, Cabello contends that he plausibly pled falsity when he contested the article's description of him as "'[t]he biggest target' of an ongoing federal criminal investigation into international narcotics trafficking and money laundering." (SAC ¶ 20.) According to Cabello, an allegedly false description of Cabello as "[t]he biggest target" is "by [no] means a trivial statement" because "such an unqualified statement . . . masquerading as fact . . . drifts toward sensationalism, and misleads the public into drawing a false corollary between Mr. Cabello's elevated political stature . . . and the degree or extent to which any ongoing federal law enforcement activity either focuses upon or relates to him—if at all." (Id.) But without challenging the accuracy of the statement that he is under investigation, Cabello cannot sufficiently plead falsity by alleging that he is not the "biggest" target of the investigation. See Jewell v. NYP Holdings, Inc., 23 F. Supp. 2d 348 (S.D.N.Y. 1998) ("[T]he statements that [plaintiff] was the "main" or "prime" suspect are substantially true in light of his admission that he was "a" suspect.").

Moreover, read carefully, Cabello appears to take issue with the article's description of him as "[t]he biggest target" not because of what that statement says, but instead because of what it implies. According to Cabello, the phrase "[t]he biggest" actually refers Cabello's status as a "big" person in the Venezuelan government (i.e., as Venezuela's "No. 2 official"), and misleads the public into believing he is the prime target of U.S. investigations. (See SAC ¶ 20.) But, under New York law, "a plaintiff alleging defamation by implication must 'show that [d]efendants affirmatively intended such implication.'" Biro, 883 F. Supp. 2d at

15

465-66 (quoting <u>Vinas v. Chubb Corp.</u>, 499 F. Supp. 2d 427, 437 (S.D.N.Y. 2007)).

Here, Cabello's sole allegation as to Dow Jones's intent—that it "intended to inflict

a vicious, deliberate, and calculated assault on Mr. Cabello's character, honor, and

reputation" (SAC ¶ 41)—is either entirely conclusory or else premised on

implausible allegations (such as the claim that Dow Jones must have fabricated its

sources because no Justice Department official would have leaked the allegedly

defamatory quotes). Accordingly, to the extent Cabello seeks to hold Dow Jones

liable for "defamatory innuendo," his claim fails. <u>See</u> <u>Chaiken v. VV Publ'g Corp.</u>,

907 F. Supp. 689, 698 (S.D.N.Y. 1995), <u>aff'd sub nom.</u> <u>Chaiken v. VV Publ'g Corp.</u>,

119 F.3d 1018 (2d Cir. 1997).

### B. <u>Actual Malice</u>

Regardless of whether Cabello adequately pled material falsity as to the

allegedly defamatory statements in the article, he has nevertheless failed to state a

claim because he has not adequately pled actual malice. As a public figure, Cabello

is required to plead that any purportedly false statements in the <u>Wall Street</u>

<u>Journal</u> article were published with "either knowledge of falsity or reckless

disregard of the truth." <u>See</u> <u>Behar</u>, 238 F.3d at 173. Cabello has failed to satisfy

this burden and his complaint therefore must be dismissed.

#### a. <u>Requirement to Plead Actual Malice</u>

Cabello is indisputably a public figure. He states that he is "an accomplished

Venezuelan public servant and government official" who has served "in a number of

high-ranking positions within the Venezuelan government." (SAC ¶ 8.) Cabello is a

"current member of the Venezuelan National Assembly," was previously President of the National Assembly from January 5, 2012 until January 5, 2016, and is "often referred to as the country's 'Number Two.'" (Id.) While not all holders of public office are public figures for the purposes of constitutional libel law, see Bufalino v. Associated Press, 692 F.2d 266, 273 n.5 (2d Cir. 1982) (questioning whether "part-time, appointed town counsel" ought to be considered public officials), the above facts demonstrate that Cabello has achieved "such pervasive fame or notoriety that he [has become] a public figure for all purposes and in all contexts," Gertz v. Robert Welch, Inc., 418 U.S. 323, 351 (1974), and certainly with regard to an article that focuses on his status as a top-ranking government official, cf. Lopez v. Univision Commc'ns, Inc., 45 F. Supp. 2d 348, 360 (S.D.N.Y. 1999) (suggesting that "a statement about a foreign public official plaintiff that does not so identify the plaintiff [may] not enjoy the protection of the constitutional malice standard").

Other courts in this district presented with defamation claims by high-ranking foreign officials have reached a similar conclusion. See Sharon v. Time, Inc., 599 F. Supp. 538, 563 (S.D.N.Y. 1984) ("The parties properly assume that Ariel Sharon, as a minister of a foreign government, is a 'public official,' or, in any event, a 'public figure.'"); see also Egiazaryan v. Zalmayev, No. 11 CIV. 2670 PKC, 2011 WL 6097136, at *4 (S.D.N.Y. Dec. 7, 2011) (finding that "an elected public servant representing the Russian people as a member of the Russian Duma (lower house of the Russian parliament) and . . . [as] a member of the Duma's Budget and Taxes

Committee" is a public figure (citation omitted) (omissions and alteration in original)).

Cabello contends in his complaint that he nevertheless need not plead actual malice as "the defamatory falsehoods espoused do not relate to Mr. Cabello's official conduct in any of his roles as a Venezuelan public servant." (SAC ¶ 53.)  Cabello does not press this point in his briefing, and for good reason.  The allegedly defamatory statements concern purported investigations by U.S. prosecutors into whether "high-ranking Venezuelan officials," including Cabello, "have turned the country into a global hub for cocaine trafficking and money laundering." (ECF No. 28, Ex. A ("WSJ Article") at 3.)[5]  The case therefore concerns Cabello in his capacity as a government official, and Cabello has conceded as much in his complaint.  (See SAC ¶ 5 (alleging that the purportedly defamatory statements in the article have harmed "Cabello's reputation and good name, both personally and in his capacity as a key member of Venezuela's National Assembly").)[6]  Cabello therefore must adequately plead actual malice to survive defendant's motion to dismiss this action.

---

[5] The complaint did not attach the allegedly defamatory Wall Street Journal article, but defense counsel submitted, under penalty of perjury, a true and correct copy of the article to the Court. (See ECF No. 28.)  Because the complaint "solely relies" on the article and the article "is integral to the complaint," this Court may take the article "into consideration in deciding defendant's motion to dismiss, without converting the proceeding into one for summary judgment."  Int'l Audiotext, 62 F.3d at 72.

[6] In other words, Cabello's allegations regarding the subject matter of the complaint are contradicted by the contents of the article.  "When allegations contained within the complaint are contradicted by documents attached to the complaint, the documents control, and the Court need not accept the allegations contained within the complaint as true."  Rozsa v. May Davis Grp., Inc., 187 F. Supp. 2d 123, 128 (S.D.N.Y. 2002), aff'd sub nom. Rozsa v. SG Cowen Sec. Corp., 165 F. App'x 892 (2d Cir. 2006).

   b.   Failure to Plead Actual Malice

Cabello's complaint, read as a whole, does not state "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of actual malice." See Biro, 807 F.3d at 546.  Read liberally, Cabello's complaint alleges that (1) Dow Jones actually knew the article's statements were false because the authors fabricated quotes and statements and falsely attributed them to unnamed government authorities (SAC ¶ 31); and (2) Dow Jones was at the very least reckless as to truth, as evidenced by its willingness to rely exclusively on anonymous sources as to claims against Cabello (id. ¶ 22); its failure to adequately vet and investigate those sources (id. ¶ 23); and its willingness to surreptitiously rely on the reporting of other publications without disclosing the original source (id. ¶¶ 35-37).  Cabello further contends that purported inconsistencies in the article demonstrate either a purposeful or reckless disregard of the truth (ECF No. 38 at 21), and that Dow Jones "intended to inflict a vicious, deliberate, and calculated assault on Mr. Cabello's character, honor, and reputation" (SAC ¶ 41).  Each of these assertions is implausible and unavailing.

First, Cabello's claim that the article included fabricated statements, which were falsely attributed to U.S. government officials in an effort to "bolster the Article's credibility, and clothe such defamatory falesehoods under a veil of officialdom so as to lend them undue credibility, relevancy and meaning," (id. ¶¶ 30-31), is unsupported by any non-conclusory factual allegations.  Cabello's sole support for his claim of nonexistent sources is his statement, on information and

belief, that no Department of Justice official has or conceivably could have leaked information, as unauthorized disclosure of "such sensitive information core to an ongoing international criminal investigation" would subject the leaker to criminal prosecution and would jeopardize the success of any potential prosecution.  (Id. ¶¶ 26-27.)  But as Cabello himself recognizes, "historic landmark journalism" has been built on the back of insider government leaks.  (See id. ¶ 28 (noting that leaks led to disclosure of the Pentagon Papers and, more recently, the existence of a systemic mass surveillance program conducted by the National Security Agency.)  Cabello nevertheless insists that government leaks occur only when they reveal "inherently controversial" issues, while leaks of an investigation into international drug trafficking are inconceivable because they "serve no noble cause, nor fulfill any legitimate public interest, such as the people's right to be informed."  (Id.)  The Court need not credit Cabello's theory of when and why leaks occur, as "the existence of alternative explanations" to the plaintiff's allegations are "so obvious [that] they render plaintiff's inferences unreasonable."  See L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 430 (2d Cir. 2011).  Indeed, one might think that an investigation into Venezeula's "Number Two" government leader for alleged drug trafficking and money laundering is precisely the sort of "controversial" topic of "legitimate public interest" that would lead to leaks, notwithstanding its confidential status.

Second, Cabello's suggestion that the article's reliance on anonymous sources constitutes evidence of actual malice is without merit.  (See SAC ¶¶ 22.)  Although

the Second Circuit has cautioned that statements "based 'wholly' on information from unverified and anonymous sources," or "based wholly on an unverified anonymous telephone call" may support an inference of actual malice, <u>Biro</u>, 807 F.3d at 545-46, nothing in the article indicates that the sources were unknown to or unverified by the journalists (<u>see, e.g.</u>, <u>WSJ</u> Article at 3-5 (referencing statements from, among others, "a Justice Department official and other American authorities," "the Justice Department official," and "a federal prosecutor from New York's Eastern District who works on Venezuelan cases").  There is a difference between publishing an article "based wholly on an unverified anonymous" source and publishing an article based on sources known to the writers but not the readers. The Second Circuit recognized as much in <u>Biro</u>, when it suggested that failing to name a source is not itself evidence of the source's unreliability.  <u>See Biro</u>, 807 F.3d at 546 (plaintiff must "allege facts that would have prompted the . . . defendant[] to question the reliability of any of the . . . unnamed sources at the time the Article was published"); <u>see also</u> <u>Michel v. NYP Holdings, Inc.</u>, 816 F.3d 686, 704 (11th Cir. 2016) ("That many of the sources were not identified by name does not render them or the reliance on them invalid.").  And in any event, Cabello's argument rests on a flawed premise, as not all statements in the article relating to Cabello are derived from unnamed sources.  (<u>See, e.g.</u>, <u>WSJ</u> Article at 8 (quoting Julio Rodriquez, "a retired colonel who knows Mr. Cabello from their days at Venezuela's military academy," regarding the likelihood that Cabello would ever "make any kind of deal with the U.S.").

21

Third, Cabello has not sufficiently pled that Dow Jones failed to "adequately investigate, vet, or otherwise verify the reliability of [its] alleged sources . . . despite the existence of circumstances that would have prompted it to do so."  (SAC ¶ 23). Cabello attempts to raise an inference of reckless disregard by pointing to the article's "silen[ce] as to any effort to directly verify or corroborate" a purportedly defamatory statement by former naval captain Leamsy Salazar—namely, that he saw Cabello supervise the launch of a large shipment of cocaine from Venezuela. (ECF No. 38 at 22.)  But mere allegations that defendant "fail[ed] to investigate before publishing, even when a reasonably prudent person would have done so[,] is not sufficient to establish reckless disregard."  Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 688 (1989); see also World Boxing Council v. Cosell, 715 F. Supp. 1259, 1266 (S.D.N.Y. 1989) ("[T]here is no rule that an author must conduct an investigation absent a showing that he had reason to doubt the veracity of his sources, or possessed other information leading him to question the truth of his assertion.").

Here, Cabello appears to argue that Dow Jones was obligated to further investigate the Salazar quote because defendant learned of the quote from an earlier article published in the Spanish periodical, ABC, rather than from anyone involved in the official U.S. investigation, as the article allegedly falsely implied. (SAC ¶¶ 35-37; see also WSJ Article at 5 (attributing source of information regarding what Salazar told U.S. authorities to "people familiar with the case").) Crediting Cabello's allegations as true, such a fact merely indicates that Dow Jones

was less than fully forthcoming regarding the source of the quote—but not that Dow Jones subjectively doubted the quote's accuracy.  Republishing "the research of [an] original publisher" is not evidence of actual malice, as republishers are entitled to rely upon the "research of the original publisher, absent a showing that the republisher 'had, or should have had, substantial reasons to question the accuracy of the articles or the <u>bona fides</u> of [the] reporter.'"  <u>Karaduman v. Newsday, Inc.,</u> 416 N.E.2d 557, 565-66 (N.Y. 1980) (quoting <u>Rinaldi v. Holt, Rinehart & Winston, Inc.,</u> 366 N.E.2d 1299 (N.Y. 1977)) (alternations in original).  Beyond referring to the ABC article as "similarly deficient" to the article at issue in the present case, Cabello has pled no facts suggesting Dow Jones had "substantial reasons to question" the accuracy of the ABC article on which it allegedly relied.  Accordingly, Cabello's claims on this point do not advance his cause.

More broadly, Cabello offers no plausible basis to infer that Dow Jones purposefully avoided or deliberately disregarded learning whether the facts set forth in the article were true.  Cabello does not allege, for example, that the <u>Wall Street Journal</u> "chose not to interview the one witness who was most likely to confirm [a source's] account of the events," even though every other witness interviewed had denied the source's account, or that the Journal failed to review readily available material that might undermine the thrust of the story.  <u>See Harte-Hanks Commc'ns, Inc. v. Connaughton</u>, 491 U.S. 657, 682-83 (1989) (finding that such facts indicated that the publisher "had serious doubts concerning the truth of [the source's] remarks, but was committed to running the story").

23

In fact, portions of the article that Cabello does not challenge as false render implausible any suggestion of "purposeful avoidance."  For instance, the article makes clear that the authors sought comment from Cabello's representatives and other Venezuelan officials before publication (WSJ Article at 6), and the article included, in several places, earlier statements by Cabello and other Venezuelan officials disputing any allegations of wrongdoing and contesting factual claims by at least one of sources quoted in the article.  (See, e.g., WSJ Article at 3 (quoting Cabello as stating he "feel[s] offended" by being "accuse[d] . . . of being a drug trafficker without a single piece of evidence"; id. at 5-6 (quoting Cabello as having called Leamsy Salazar—"who has said he headed Mr. Cabello's security detail"—an "infiltrator" who did not head Cabello's security detail and who has no proof of Cabello's involvement in drug trafficking; id. at 6 (quoting a statement from a Twitter account in the name of General Motta Dominguez, which "ridicule[d] the U.S. investigations").)  By including Cabello and others' denials of the wrongdoing that is purportedly the subject of U.S. investigation and quotes by Cabello that flatly contradict claims by a source cited in the article (i.e., Salazar), the article cannot be said to evince an intent to deliberately avoid learning or portraying the truth.  See Michel, 816 F.3d at 708 ("[W]here the publisher includes information contrary to the general conclusions reached in an article, that showing tends to undermine the claims of malice.").

Cabello next argues that he unearthed "circumstantial evidence" of actual malice by pointing out "worrisome internal contradictions" in the article regarding

the "degree to which the alleged investigation is purportedly focused on Mr.
Cabello." (ECF No. 38 at 21.) But these "worrisome internal contradictions" are
statements that alternatively refer to Cabello as the "biggest," the "leading" and the
"main" target of the investigation. (SAC ¶¶ 19-20, 25, 28.) Such inconsistencies are
too minor to constitute evidence of fabrication, and Cabello has pointed the Court to
no authorities suggesting otherwise.

Finally, Cabello alleges that Dow Jones "intended to inflict a vicious,
deliberate, and calculated assault on Mr. Cabello's character." (SAC ¶ 41.) To the
extent this allegation is intended to state a claim for actual malice, it is entirely
without merit. As the Supreme Court made clear in <u>Masson v. New Yorker
Magazine, Inc.</u>, 501 U.S. 496 (1991), "[a]ctual malice under the <u>New York Times</u>
standard should not be confused with the concept of malice as an evil intent or a
motive arising from spite or ill will." <u>Id.</u> at 510. Cabello's allegations of viciousness
and ill will are thus irrelevant to his claim.

Notwithstanding the complaint's deficiencies, Cabello points to pre-<u>Twombly</u>
and pre-<u>Biro</u> decisions to argue that the case must proceed to discovery so that
Cabello can "probe . . . whether [Dow Jones] had an adequate basis for believing in
the reliability of [its confidential] source[s]," <u>Sharon</u>, 599 F. Supp. at 583, as a
contrary ruling would enable Dow Jones to "us[e] as a sword the information which
[it is] shielding from disclosure," <u>Collins v. Troy Pub. Co. Inc.</u>, 213 A.D.2d 879, 881
(N.Y. App. Div. 1995) (quoting <u>Sands v. News Am. Pub. Inc.</u>, 161 A.D.2d 30, 37
(N.Y. App. Div. 1990)) (internal quotation marks omitted). This argument flips the

pleading standard on its head and was rejected by the Second Circuit in <u>Biro</u>.  <u>See</u>

807 F.3d at 546 ("To the extent that [the plaintiff] reads [a pre-<u>Twombly</u> Second

Circuit decision] . . . as permitting an implausible claim to proceed to discovery, we

think <u>Twombly</u> rejected this approach.").  Cabello cannot secure discovery without

first pleading sufficient facts to allow the reasonable inference that discovery will

yield evidence supporting his claims.

VI.     CONCLUSION

  For the reasons set forth above, plaintiff has failed to make out a prima facie

case of libel and his second amended complaint is therefore DISMISSED.[7] The

Clerk of Court is directed to close the motion at ECF No. 36 and terminate this

action.

  SO ORDERED.

Dated:  New York, New York
    August 16, 2017

              _____
               KATHERINE B. FORREST
               United States District Judge

---

[7] Because Cabello has already amended his complaint twice and has not requested an opportunity
for further amendment, the Court declines to afford Cabello an opportunity to amend his complaint.
The case is therefore dismissed with prejudice.